AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
District of New Mexico

FILED
At Albuquerque NM

JUN 3 0 2016

MATTHEW J. DYKMAN
CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

GALAXY S6 EDGE CELLULAR TELEPHONE, SERIAL
NUMBER R38H200BGZW, IMEI: 357741062823693

)
)
)
)
)
)

Case No. 16-MR-492

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attchment A

located in the _____ State and _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841 | Possession with Intent to Distribute 500 grams and more of a mixture and Substance Containing Methamphetamine |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steven Lopez, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 30, 2016

_____
*Judge's signature*

KAREN B. MOLZEN
U.S. MAGISTRATE JUDGE
*Printed name and title*

City and state: Albuquerque, New Mexico

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **GALAXY S6 EDGE CELLULAR TELEPHONE, SERIAL NUMBER R38H200BGZW, IMEI: 357741062823693**, CURRENTLY LOCATED AT 5441 WATSON DRIVE SE, ALBUQUERQUE, NM 87106 | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Steven G. Lopez, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent (SA) with the Department of Homeland Security, U.S. Immigration & Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been employed by HSI as such since April 2002.  I have been a federal law enforcement officer for over 18 years in total with Homeland Security Investigations and the United States Customs Service.

3.      I have received extensive training and practical experience pertaining to federal criminal procedures, federal criminal statutes, United States Immigration and Nationality law,

United States Customs laws and regulations, and other federal and state laws pertaining but not limited to: Alien Smuggling/Human Trafficking, the importation and distribution of controlled substances, bulk cash smuggling, firearms, commercial fraud, counter proliferation investigations and conspiracy. I am authorized, and presently assigned to investigate violations of Narcotics Smuggling Trafficking in violation of Title 21 United States Code, Section 841 and Alien Smuggling/Human Trafficking in violation of Title 8 United States Code, Section 1324/1326 and other violations of federal law. I have attended the Criminal Investigator Training Program (CITP), and United States Customs Special Agent Training Program (CBIS) at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia.

4.      I have also acquired knowledge and information about such offenses, and the various means and methods by which they are furthered from numerous sources, including formal and informal training from other law enforcement officers, investigators, and Special Agents; interviews of informants and arrestees; and interviews of other knowledgeable individuals.

5.      Based on my training and experience, I am familiar with matters including, but not limited to, the means and methods used by persons and drug smuggling organizations (DTO) to transport illegal narcotics and to hide profits generated from those type of transactions.

     a.  Narcotic Smugglers often conceal names, addresses, telephone numbers, email addresses, or other pertinent codes and/or contact information for their current or past illegal source(s) of supply, customers, or criminal associates in the electronic memory of their cellular telephones.

2

b.  Narcotic Smugglers often conceal photographs of evidence, vehicles, locations, or photographs of narcotic smuggling associates in the electronic memory of their cellular telephones.

c.  Narcotic Smugglers often communicate with their source(s) of supply, customers, or criminal associates by text messaging and/or email from their cellular telephones. Accordingly, pertinent texts and/or email messages are often stored in the electronic memory of their cellular telephones.

d.  Narcotic Smugglers must maintain and have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing criminal business. As such they often store bank account information, ledgers, or lists of where assets are stored in the electronic memory of their cellular telephones.

6.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.      The property to be searched is a **GALAXY S6 EDGE CELLULAR TELEPHONE, SERIAL NUMBER R38H200BGZW, IMEI: 357741062823693**, hereinafter the "Device." The Device is currently located at 5441 WATSON DRIVE SE, ALBUQUERQUE, NM 87106.

8.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

3

## PROBABLE CAUSE

9.      On March 10, 2016, HSI Agents were contacted by Officer Gerardo Hernandez of the New Mexico State Police Department concerning a gold in color, Pontiac G-6, bearing Oklahoma Plate number 355 MIM that he had stopped near mile marker 327, East bound on Interstate 40 and cited for speeding.

10.      The Officer noticed two (2) passengers in the vehicle. The Officer identified the driver as Ruben FUENTES, Jr. and the passenger as Sara VELAZQUEZ-Fuentes. Officer Hernandez asked Mr. FUENTES for his driver's license, vehicle registration and insurance. Mr. FUENTES told Officer Hernandez that he did not have a driver's license. While running database queries and waiting for information to be returned, Officer Hernandez learned that Mr. FUENTES was travelling back from Albuquerque, NM to Oklahoma City, Oklahoma after a two day trip to visit his cousin. During the entire contact, Officer Hernandez noticed that Mr. FUENTES was visibly nervous. Officer Hernandez received information that Mr. FUENTES' driver's license was suspended out of Oklahoma.

11.      Officer Hernandez then approached the passenger side of the vehicle and spoke with the passenger Sara VELAZQUEZ-Fuentes. Officer Hernandez asked Ms. VELAZQUEZ-Fuentes about her trip. Ms. VELAZQUEZ-Fuentes told Officer Hernandez that she and her son, Ruben FUENTES Jr, were returning to Oklahoma City, Oklahoma from Los Angeles, California. Officer Hernandez asked Ms. VELAZQUEZ-Fuentes if they had made a stop in Albuquerque, NM. Officer Hernandez asked Ms. VELAZQUEZ-Fuentes if they had visited any family in Albuquerque, NM, of which she stated that they had not. Officer Hernandez then walked back to Mr. FUENTES and finished writing the citations.

4

12.     Officer Hernandez then provided Mr. FUENTES all of his documents and citations, then asked Mr. FUENTES if he had any questions, of which he did not. As Mr. FUENTES was walking away, Officer Hernandez asked him if he would answer a couple of questions. Mr. FUENTES freely agreed to answer questions. Due to extreme nervousness exhibited by Mr. FUENTES and the inconsistent stories between him and his mother, Officer Hernandez asked for and was granted written consent to search the vehicle by both Mr. FUENTES and Ms. VELAZQUEZ-Fuentes. During the search of the vehicle, Officer Hernandez opened an ice chest, which was found in the trunk of the vehicle. In the chest, under the ice, Officer Hernandez discovered ten (10) containers wrapped in plastic, which appeared to contain crystal methamphetamine. Officer Hernandez told Mr. FUENTES he was under arrest. Officer Hernandez asked Mr. FUENTES if he knew what was in the packages. Mr. FUENTES admitted it was methamphetamine.

13.     Mr. FUENTES was transported to the New Mexico State Police Office in Tucumcari, NM where he was processed. The narcotics were field tested and tested positive for the properties of methamphetamine. The methamphetamine weighed approximately 13.45 pounds.

14.     Officers Hernandez and Chester Bobbitt interviewed Mr. FUENTES. Prior to the recorded interview, Mr. FUENTES was advised of his Miranda rights. Mr. FUENTES stated that he understood his rights, waived his rights and was willing to answer questions. Mr. FUENTES admitted as a favor to a friend he was to come to Albuquerque, NM and pick up drugs at a local oil change business. Mr. FUENTES stated that he was going to take the drugs back to Oklahoma City, Oklahoma and drop them off to an unknown person. Mr. FUENTES

5

stated he thought he was going to be paid for this favor, although was not sure of the amount. During the interview, Mr. FUENTES made a statement that he did not have a phone. Later in the interview, Mr. FUENTES told the Agents he was supposed to call "Juan RAMIREZ" when he arrived to Oklahoma City, Oklahoma to arrange somebody to come pick up the narcotics. Later in the interview, Mr. FUENTES stated, "Juan RAMIREZ" knows something was wrong, because Mr. FUENTES was supposed to call at 4:00 p.m. Agents asked Mr. FUENTES how he was supposed to call Juan RAMIREZ since according to Mr. FUENTES he did not have a phone. Mr. FUENTES stated he was going to call from his mother's phone. The cellular telephone in HSI custody belongs to Ms. Sara VELAZQUEZ-Fuentes, mother of Mr. FUENTES.

15.     The Device is currently in the lawful possession of the Department of Homeland Security, Homeland Security Investigations (HSI). It came into HSI's possession in the following way: The Device was seized incident to Mr. FUENTES' arrest. Therefore, while HSI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

16.     The Device is currently in storage at 5441 WATSON DRIVE SE, ALBUQUERQUE, NM 87106. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of HSI.

6

## TECHNICAL TERMS

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

  a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

  b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by

7

connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, a digital camera, a PDA, and is capable of accessing the internet.  In my training and experience, examining data stored on devices of

8

this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

20.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file)..

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

9

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the

Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Device described in Attachment A to seek the items described

in Attachment B.  Due to being assigned to other investigations and the high tempo work load as

well as Temporary Duty Assignments, I have now had the time to prepare this warrant and

understand that the seizure of the cellular telephone was in March of 2016.


Respectfully submitted,


Steven G. Lopez
Special Agent
Homeland Security Investigations


Subscribed and sworn to before me
on June 28, 2016:
        30TH

UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

The property to be searched is a **GALAXY S6 EDGE CELLULAR TELEPHONE, SERIAL NUMBER R38H200BGZW, IMEI: 357741062823693,** hereinafter the "Device." The Device is currently located at 5441 WATSON DRIVE SE, ALBUQUERQUE, NM 87106. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

*See attached photographs of GALAXY S6 EDGE CELLULAR TELEPHONE, SERIAL NUMBER R38H200BGZW, IMEI: 357741062823693.

**ATTACHMENT B**

1.      All records on the Device described in Attachment A that relate to violations of

Title 21, United States Code, Sections 841 and involve Ruben FUENTES since March 1, 2016,

including:

     a.  lists of contacts and related identifying information;

     b.  any information related to sources of narcotics smuggling/trafficking (including

       names, addresses, phone numbers, or any other identifying information);

     c.  any information recording Ruben FUENTES schedule or travel from March 1,

       2016 to the present;

     d.  all bank records, checks, credit card bills, account information, and other financial

       records.

2.      Evidence of user attribution showing who used or owned the Device at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items

of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that

can store data) and any photographic form.